**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee*,

v.

SHAWN ANTHONY SWOR,
            *Defendant-Appellant*.

No. 12-30250

D.C. No.
9:11-cr-00057-
DWM-2

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
May 10, 2013—Portland, Oregon

Filed August 27, 2013

Before: Alex Kozinski, Chief Judge, and Marsha S.
Berzon, and Andrew D. Hurwitz, Circuit Judges.

Per Curiam Opinion

## SUMMARY[*]

### Criminal Law

The panel affirmed in part and vacated in part a sentence imposed after the defendant pled guilty to one count of investment fraud in violation of 18 U.S.C. § 1343, and remanded.

The panel held that the district court abused its discretion by including in the restitution order losses suffered by victims who entrusted Eric Schultz to invest in an investment scheme touted by Dan Two Feathers on the ground that the defendant had introduced Schultz to Two Feathers some months earlier. The panel reasoned that intervening events made the defendant's connection to Schultz's losses in that scheme – which began two months after, and was separate from, the scheme in which the defendant was involved – too attenuated to impose liability on the defendant for Schultz's victims' losses.

The panel held that the district court did not clearly err in finding that the defendant failed to establish that he played a minor role in the offense.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Timothy M. Bechtold (argued), Bechtold Law Firm, PLLC, Missoula, Montana, for Defendant-Appellant.

Carl E. Rostad (argued) and J. Bishop Grewell, Assistant United States Attorneys; Michael W. Cotter, United States Attorney, United States Attorney's Office, Great Falls, Montana, for Plaintiff-Appellee.

**OPINION**

PER CURIAM:

Shawn Anthony Swor appeals from the sentence imposed after he pled guilty to one count of investment fraud in violation of 18 U.S.C. § 1343. We affirm the sentence in part and vacate in part.

**I.**

Swor was a mortgage broker. In February 2008, he, Dan Two Feathers, and Terrence Paulin founded DTF Consulting Group to lure investors to "high yield" opportunities, using "leveraged investment and securities programs." Essentially, DTF advertised that it would leverage modest investments to secure much larger lines of credit and invest loan proceeds in government securities, which DTF would buy at a discount and sell at a premium, using its ostensible "connections in the world of international finance." At Two Feathers' direction, Paulin created a fraudulent $1.5 billion letter of credit "to entice potential investors." During DTF's short existence,

each of the company's founders traveled the country to promote the scheme and boast of its "extremely high returns."

One potential investor intrigued by the scheme was Eric Schultz, whom Swor introduced to Two Feathers in March 2008. Schultz remained on the sidelines for a time, staying in close contact with Two Feathers about the securities' rates of returns without making an investment.

DTF met its demise soon after Two Feathers tried to rely on the fraudulent letter of credit when purchasing a $13 million home. After a realtor raised suspicions, the FBI seized the letter. Swor and Paulin thereupon severed ties with Two Feathers and stopped promoting the DTF scheme in June 2008. By the time DTF dissolved, Swor had personally received $208,017.55 from investors' contributions to DTF.

With Swor and Paulin out of the picture, Two Feathers used a new "front company," TLT Holdings, to tout "his investment scheme." In the meantime, Schultz founded his own "Joint Venture Capital Program," modeled after Two Feathers' investment "strategy." In August 2008, Two Feathers reached out to Schultz to promote TLT, specifically advising that he no longer worked with Swor, Paulin, or DTF. Two Feathers' pitch was that TLT's "expected rates of return were more realistic and conservative than" DTF's. TLT's plan was to use various security companies to buy and sell Treasury Bills "stripped of their interest payments." Schultz was finally satisfied that Two Feathers "seemed to have his business affairs in order," and transferred $200,000 — money pooled from Schultz's own investors — to TLT's Bermuda account.

Like Swor, Schultz, Two Feathers, and Paulin were all eventually convicted of investment fraud for their roles in the respective schemes.[1]  On appeal, Swor argues that the district judge should have given him a "minor role" sentencing reduction and that the judge miscalculated how much he should pay in restitution.

## II.

The district court ordered Swor to pay $747,345.11 in restitution, pursuant to the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. § 3663A, stating:

> Mr. Swor is the one who introduced — for whatever reason introduced Mr. Schultz to Mr. Two Feathers.  And it's also clear that Mr. Swor and Mr. Schultz had been in prior, for want of a better term, business relationships.  And it's clear that in the absence of the introduction, knowing full well what was going on, that Mr. Schultz would not have been a part of the scheme with DTF.
>
> Without the introduction, without his knowledge, and without the prior association, I don't believe that there would have been anything other than serendipity that would have gotten Mr. Schultz connected with Mr. Two Feathers.

---

[1] *See United States v. Two Feathers*, No. 12-30222, 2013 WL 1987371 (9th Cir. May 15, 2013) (affirming sentence); *United States v. Paulin*, No. 11-cr-57 (D. Mont.); *United States v. Schultz*, No. 10-cr-45 (D. Mont.).

> Consequently, I think that he is responsible
> for anything that's foreseeable. And I think it
> certainly is foreseeable that Mr. Schultz,
> regardless of the source of his money, was
> going to engage in the investment in the
> scheme for the high rate of return promised,
> particularly in light of other representations.
> It's certainly foreseeable that he would invest
> and, indeed, he did.[2]

Swor challenges only the inclusion of $166,887.09 to be disbursed to those on whose behalf Schultz invested in Two Feathers' TLT scheme.[3]

Under the MVRA, restitution "may be awarded only for losses for which the defendant's conduct was an actual *and* proximate cause." *United States v. Kennedy*, 643 F.3d 1251, 1261 (9th Cir. 2011) (internal quotation marks omitted) (emphasis added); *see* 18 U.S.C. § 3663A(a)(2) (defining "victim" as "a person directly and proximately harmed"). "But for" cause is insufficient. *See, e.g.*, *Kennedy*, 643 F.3d at 1261; *United States v. Speakman*, 594 F.3d 1165, 1171 (10th Cir. 2010); *United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007); *United States v. Cutter*, 313 F.3d 1, 7 (1st Cir. 2002).

We have interpreted the similarly worded Victim and Witness Protection Act of 1982 to require that "'the

---

[2] In fact, as noted, Schultz did not invest in the DTF scheme.

[3] From his $200,000 investment in TLT, Schultz's victims have already recovered $33,112.91 from one of Two Feathers' bank accounts, frozen by the State of Montana.

government . . . show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally).'" *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 928 (9th Cir. 2001) (alteration omitted) (quoting *United States v. Vaknin*, 112 F.3d 579, 590 (1st Cir. 1997)); *see* 18 U.S.C. § 3663(a)(2) (defining "victim" as "a person directly and proximately harmed"). Although "[t]here may be multiple links in the causal chain" "between the defendant's offense conduct and the victim's specific losses," "the chain may not extend so far . . . as to become unreasonable." *Kennedy*, 643 F.3d at 1262–63 (internal quotation marks omitted). Moreover, "any . . . intervening cause[] must be directly related to the defendant's conduct." *Id.*

The district court held Swor accountable in its restitution order for the losses of Schultz's victims as a result of their entrusting Schultz to invest in Two Feathers' TLT scheme — a scheme that began two months after, and was separate in its participants, "front" entity, and operational details from the one in which Swor was involved — on the ground that Swor had introduced Schultz to Two Feathers some months earlier. But as far as the record shows, before Schultz made the investment, and before Two Feathers put together the TLT scheme at issue, Swor and Two Feathers had severed ties. "[T]he causal nexus between [Swor's] conduct and [Schultz's] loss," *see Gamma Tech*, 265 F.3d at 928, amounted, essentially, to introducing two people to each other in the course of carrying out a fraudulent scheme, where the two later, and independently, became involved in a separate, operationally different fraudulent scheme.

This connection certainly established the introduction of Schultz to Two Feathers as a "but for" cause of Schultz's involvement in the TLT scheme; had the introduction never occurred, there is little likelihood that Two Feathers would have reached out to Schultz regarding the TLT scheme or that Schultz would have accepted the invitation.  But the intervening events — the dissolution of DTF, the severance of a business connection between Two Feathers and Swor, Two Feathers' independent decision once again to promote a somewhat different fraudulent securities scheme, and Swor's lack of involvement in the resulting TLT scheme, including the invitation to Schultz to participate in that scheme — made Swor's connection to Schultz's losses (actually, that of his victims) in the TLT scheme simply "too attenuated" to impose liability on Swor for Schultz's victims' losses. *See id.*

The district court therefore abused its discretion in including the $166,887.09 sum in Swor's restitution order. *United States v. Lazarenko*, 624 F.3d 1247, 1249 (9th Cir. 2010).  We accordingly vacate the sentence with regard to the amount of restitution ordered and remand for the limited purpose of entering an amended restitution order, not to exceed $580,548.02.

## III.

Swor co-founded DTF, traveled to promote the scheme to potential investors, and derived profits from that enterprise. Comparing Swor's conduct to that "of the other participants in the" DTF scheme, *United States v. Rojas-Millan*, 234 F.3d 464, 473 (9th Cir. 2000), we conclude that the district court "did not clearly err in finding that [Swor] failed to establish that he played a minor role in the offense," and therefore was not eligible for a two-level reduction in the base offense level,

*see United States v. Rodriguez-Castro*, 641 F.3d 1189, 1192–93 (9th Cir. 2011); U.S.S.G. § 3B1.2(b) (2011).

**SENTENCE AFFIRMED IN PART, VACATED IN PART, AND REMANDED**.