NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 25 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff-Appellee,<br><br>  v.<br><br>DAVID BALL,<br><br>             Defendant-Appellant. | No.   15-10319<br><br>D.C. No.<br>2:13-cr-00018-JCM-GWF-10<br><br><br>MEMORANDUM* |
| UNITED STATES OF AMERICA,<br><br>             Plaintiff-Appellee,<br><br>  v.<br><br>KEITH GREGORY,<br><br>             Defendant-Appellant. | No.   15-10333<br><br>D.C. No.<br>2:13-cr-00018-JCM-GWF-2 |
| UNITED STATES OF AMERICA,<br><br>             Plaintiff-Appellee,<br><br>  v.<br><br>EDITH GILLESPIE, | No.   15-10369<br><br>D.C. No.<br>2:13-cr-00018-JCM-GWF-11 |

---

     * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Defendant-Appellant.

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

  v.

SALVATORE RUVOLO,

        Defendant-Appellant.

No.   15-10371

D.C. No.
2:13-cr-00018-JCM-GWF-9

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

  v.

LEON BENZER,

        Defendant-Appellant.

Nos.  15-10421, 15-10422

D.C. Nos.
2:13-cr-00174-JCM-GWF-1,
2:13-cr-00018-JCM-GWF-1

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted July 14, 2017
San Francisco, California

Before:  BEA and N.R. SMITH, Circuit Judges, and ROBRENO,[**] District Judge.

---

    [**]    The Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

The five defendants in this consolidated appeal were part of a complicated criminal conspiracy to take over and defraud Homeowners Associations ("HOAs") of condominium developments in the Las Vegas, Nevada area. One of the defendants, Leon Benzer ("Benzer"), was one of two "masterminds" behind the scheme, and the other four defendants played important roles in the conspiracy.[1] Three defendants appeal their convictions, and three defendants appeal their sentences.[2] We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

---

[1] This scheme had four main parts. First, Benzer and his associates identified condominium developments to target. These developments usually had construction defect settlement funds available or needed repair work done. Second, Benzer recruited people to act as straw purchasers at the targeted condominium development. These straw purchasers made false statements on mortgage applications to purchase the condominiums, including falsely stating that the down payment for the condominium was coming from their savings and income when in fact that money was coming from Benzer. Benzer paid these straw purchasers. Third, Benzer recruited "politicians" to run for board of directors seats at the targeted HOA. These politicians also received cash from Benzer for their efforts. Benzer and his associates rigged HOA elections to ensure the election of their chosen politicians to the board of directors. Fourth, after a majority of an HOA's board of directors was in Benzer's control, Benzer and Nancy Quon ("Quon"), a lawyer who was the other mastermind behind the scheme, would use that control to make money. Quon's law firm received considerable attorney's fees by representing the HOA boards. For Benzer, the HOA boards would make contracts with Silver Lining Construction ("Silver Lining"), Benzer's company, to perform construction work based on the construction defect settlement funds that the HOAs had received from prior litigation. Benzer intended for Silver Lining to acquire the entire value of the construction defect settlement funds while performing minimal work.

[2] Keith Gregory ("Gregory") appeals both his conviction and sentence.

1. Edith Gillespie ("Gillespie"), who was convicted of conspiracy to commit wire and mail fraud, 18 U.S.C. § 1349, and of wire fraud, 18 U.S.C. § 1343, appeals her conviction and contends that insufficient evidence supports the jury's verdict. Conspiracy to commit mail and wire fraud requires the jury to find "(1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime." *United States v. Green*, 592 F.3d 1057, 1067 (9th Cir. 2010). The government proved that there was an agreement to engage in criminal activity, and Gillespie does not challenge that fact in her brief. As for the overt act and intent to commit wire fraud requirements, the indictment charged Gillespie with committing the following overt act in furtherance of the conspiracy: acting as "a straw purchaser at Chateau Versailles HOA[.]" Anthony Wilson ("Wilson"), Benzer's realtor and chief recruiter, testified at trial that he met with Gillespie and went over the details of the scheme, including her planned straw purchase at Chateau Versailles. Wilson testified that he told her "the property would be in her name," but that "Leon [Benzer] would really own the property." Wilson also testified that he helped her with the sales contract. Corroborating this testimony, the government introduced into evidence a chart Wilson created that identified "Gillespie" as a straw owner at Chateau Versailles. The government introduced into evidence Gillespie's mortgage application for the Chateau Versailles unit.

4

This application stated that she did not borrow any portion of the down payment, but testimony from Wilson established that Benzer had funded the entire down payment. Therefore, sufficient evidence supports the jury's verdict on the conspiracy count.

Wire fraud in violation of 18 U.S.C. § 1343 has three elements: "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud." *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013). Gillespie was charged with wire fraud for receiving the mortgage from a bank to finance her purchase of the Chateau Versailles unit. As noted above, the government presented sufficient evidence that Gillespie misrepresented the source of her down payment in the mortgage application. The loan was funded through a wire transfer. Gillespie's misrepresentation on the mortgage application constituted sufficient evidence to convict Gillespie of wire fraud based on a mortgage fraud theory. *See United States v. Lindsey*, 850 F.3d 1009, 1013–14 (9th Cir. 2017).

2. Gillespie also contends that the district court abused its discretion when it denied her motion to dismiss the indictment on the basis of pre-indictment delay. "[E]xorbitant delay" caused by "fundamentally unfair prosecutorial conduct" violates the Due Process Clause. *Betterman v. Montana*, 136 S. Ct. 1609, 1613, 1617 (2016). To establish such a violation, a defendant must show (i) "actual, non-

5

speculative prejudice from delay" and (ii) that "the length of the delay, when balanced against the reason for the delay . . . offend[s] those fundamental conceptions of justice which lie at the base of our civil and political institutions." *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992) (internal quotation marks and citation omitted). To establish prejudice, a defendant "must demonstrate by definite and non-speculative evidence how the loss of a witness or evidence is prejudicial to the defendant's case." *Id.*

The district court correctly held that Gillespie has not established prejudice. According to Gillespie, the pre-indictment delay "left witnesses without specific memories of the documents that were executed by whom." However, Gillespie does not point to specific witnesses whose memories decayed because of the passage of time during the pre-indictment delay, which means the claimed prejudice is speculative. Therefore, the district court did not abuse its discretion when it denied Gillespie's motion to dismiss.[3]

---

[3] Gillespie has filed a motion to compel the government to supplement the record on appeal. Gillespie requests that the government produce a report from an internal investigation into an alleged leak of information that led to the recusal of the District of Nevada United States Attorney's Office. We do not allow parties to supplement the record on appeal "except in extraordinary circumstances[.]" *United States v. Boulware*, 558 F.3d 971, 976 (9th Cir. 2009) (citing *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003)). Gillespie has not shown an extraordinary circumstance because she has not shown in her motion why the report was relevant to her defense or the issues she raises on appeal. Therefore, the motion is **DENIED.**

3. Keith Gregory ("Gregory"), who was convicted of conspiracy to commit wire and mail fraud and of wire fraud, appeals his conviction and contends that there is insufficient evidence to support the verdicts against him.[4] Gregory agrees that Benzer and Benzer's associates conspired to defraud HOAs and that Gregory's actions furthered the conspiracy's objectives, but contends that he personally lacked knowledge of the conspiracy and the intent to defraud.

There was sufficient evidence for the jury to determine that Gregory knew about the takeover scheme and consciously helped facilitate the scheme through his actions, which included misrepresentations to hide Benzer's plan. Benzer was seeking to defraud the Vistana HOA by overcharging the HOA for construction defect work to be performed by Silver Lining. When Benzer needed immediate payment from Vistana in the form of a "mobilization fee," Benzer told Gregory that "I need to get this [V]istana deposit done over the [next] few days, im [sic] in real jeopardy of loosing [sic] my building that I worked on for years." Gregory then coordinated with Benzer and his associates to set up an emergency meeting of the Vistana HOA board of directors in September 2007 to award the construction defect litigation contract to Silver Lining. Gregory, with Benzer and his associates,

---

[4] Gregory filed a motion to extend the time to file his reply brief, citing health issues experienced by his counsel. Subsequently, Gregory filed a motion to allow his reply brief to be filed late. We grant Gregory's motion to extend the time to file his reply brief and deny as moot his motion to file a late brief.

7

held a "pre-meeting" to script how the emergency board meeting would play out. Also, as part of this plan, Gregory represented to the Vistana HOA, his client at the time, that the reason for the emergency action was that Silver Lining had threatened litigation based on its "right of first refusal" contract. However, the real reason for the rush was that Benzer urgently needed liquidity to prevent a default on a large loan. In fact, before the emergency board meeting, Benzer sent an email to Gregory and the controlled board members at Vistana with an attached invoice from Silver Lining. This email instructed the recipients: "pls dont [sic] leave the meeting with out [sic] collecting this." At the emergency meeting, the Vistana HOA board awarded the construction defect remediation contract and a $1,300,000 mobilization fee to Silver Lining. Benzer then wrote Gregory a personal check for $10,000 on September 24, 2007, which Gregory deposited on September 28, 2007. On October 25, 2007, Gregory cashed a second personal check from Benzer for $2,000.

Furthermore, Ralph Priola, a close Benzer associate, was asked at trial, "[W]hich attorneys [did] you work[] with in connection with the HOA takeover plan?" Mr. Priola responded that he "attended many meetings with Mr. Gregory, at his office, with Leon [Benzer] and other [HOA] board members."

Gregory also knew that Benzer was offering free legal services to his controlled politicians on the HOA boards of directors because Benzer paid Gregory

8

to represent these politicians. In January 2007, Benzer paid Gregory to sue on behalf of Arnie Myers, a prospective member of the Jasmine HOA board of directors. In April 2007, Gregory submitted a response to a Nevada regulator on behalf of the Vistana HOA board president, Steve Wark, who had been a straw buyer for Benzer. Finally, on October 1, 2007, MaryAnn Watts, who had been involved in the scheme, visited Gregory's office and threatened that she would report Benzer's scheme to the authorities unless her demands were met.

4. Salvatore Ruvolo ("Ruvolo"), who was convicted of conspiracy to commit wire and mail fraud and of wire fraud, and Gregory appeal their convictions and contend that the district court's comments during the trial showed bias against defense counsel that amounted to judicial misconduct. Since the defendants failed to object below, we review the alleged judicial misconduct for plain error. *United States v. Morgan*, 376 F.3d 1002, 1006–07 (9th Cir. 2004). To succeed on this claim, the record must show "actual bias" by the trial judge "or leave [] the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality." *United States v. Mostella*, 802 F.2d 358, 361–62 (9th Cir. 1986) (Kennedy, J.) (citation omitted).

Some of Judge James C. Mahan's conduct towards defense counsel was unfortunate, and some of Judge Mahan's comments should have been rephrased to

9

avoid the appearance of partiality. Although the district court's comments were at times ill considered, they do not constitute judicial misconduct under plain error review. Defendants contend that the district court interrupted defense counsel too often, but some of these interruptions were reasonable attempts to minimize repetition and save time. Also, some of the district court's comments were proper examples of the court limiting the scope of defense counsel's questioning of witnesses. Furthermore, the twenty-three instances of alleged misconduct identified by Ruvolo and Gregory occurred over the course of a fifteen-day jury trial. We did not reverse a district court when the judge's comments were "inconsistent with standards of judicial decorum" and the judge "interrupted and admonished defense counsel over a hundred times during the course of a week-long trial." *United States v. Scott*, 642 F.3d 791, 799 (9th Cir. 2011).

Also, the district court gave a limiting instruction to the jury "not [to] read into anything [the judge] may have said or done[.]" In *Scott*, we stated that such an instruction can "alleviate any appearance of impartiality the judge's questioning may have conveyed." *Id.* at 800 (citation omitted).

5. Gregory also appeals his sentence and contends that his sentence was substantively unreasonable. The district court sentenced Gregory to 120 months' imprisonment, which was 48 months below his United States Sentencing

10

Guidelines ("Guidelines")[5] range of 168 to 210 months. Gregory nonetheless

claims that he deserved an even lower sentence because his sentence was

"disproportionate" to his role in the conspiracy and other sentences given to co-

conspirators. We review the substantive reasonableness of a sentence for abuse of

discretion. *United States v. Autery*, 555 F.3d 864, 869–71 (9th Cir. 2009). A

sentence must reflect "rational and meaningful consideration of the factors

enumerated in 18 U.S.C. § 3553(a)." *United States v. Ressam*, 679 F.3d 1069,

1089 (9th Cir. 2012).

First, Gregory claims that his culpability was a "close question" and that he

deserved a lesser sentence as a result. The sufficiency of the evidence is not a

consideration laid out in 18 U.S.C. § 3553(a). Also, as described above, Gregory's

claim is contrary to the record.

Second, Gregory claims that his role was "tangential" compared to other

conspirators who received lesser sentences. But the district court concluded that

Gregory was "the linchpin" of the operation. The record shows that Gregory

played a key role in the takeover of two HOAs, Vistana and Sunset Cliffs.

Third, Gregory claims that his sentence fails to reflect the fact that his

inability to practice law is a "severe punishment." However, Gregory's 120

---

[5] The 2014 Guidelines Manual was in effect when the defendants in this case were sentenced. All references to the Guidelines refer to this version of the Guidelines Manual.

months' sentence could be viewed as a reasonable sentence intended to deter other attorneys from participating in frauds.

Fourth, the district court applied a two-level enhancement under Guidelines section 2B1.1(b)(2)(A)(i) because Gregory's crimes involved "10 or more victims." Gregory contends that the enhancement should not have been applied because there were not ten victims. A victim under the Guidelines is "any person who sustained . . . [an] actual loss." U.S.S.G. § 2B1.1. cmt. 1. Actual loss is defined as pecuniary harm, any harm that is monetary or measureable in money. *See* U.S.S.G. §§ 2B1.1. cmt. 3(A)(i), (iii). The Vistana HOA contained 702 housing units. Each housing unit owner was a member of the HOA under Nevada Law, Nev. Rev. Stat. § 116.3101(2), and paid monthly dues to the HOA. Since these homeowners' dues were fraudulently diverted to Benzer's scheme, these homeowners suffered pecuniary harm and were victims. Thus, the court did not err when it applied the enhancement for ten or more victims.

Fifth, Gregory claims that his sentence violates the Eighth Amendment. We generally do not overturn a sentence on Eighth Amendment grounds when the sentence is within the statutory limit, as was Gregory's. *United States v. Albino*, 432 F.3d 937, 938 (9th Cir. 2005) (per curiam). Gregory has not shown that his sentence is so "grossly disproportionate to the severity of [his] crime[s]" that it must be overturned. *Solem v. Helm*, 463 U.S. 277, 306 (1983).

12

6. Benzer pleaded guilty to conspiracy to commit wire and mail fraud, wire fraud, mail fraud, and tax evasion. The district court sentenced Benzer to 188 months' imprisonment, which it said was "within the Guidelines range" without expressly stating the Guidelines range. The Presentence Report ("PSR") had calculated Benzer's Guidelines range based in part on a 24-level enhancement pursuant to Guidelines section 2B1.1(b)(1)(M) because the loss caused by Benzer's crimes exceeded $50,000,000. Benzer disputes that the loss amount caused by his crimes exceeded $50,000,000. The district court never expressly determined the loss amount. However, the court appears to have assumed that the loss amount exceeded $50,000,000 because it appears to have applied the Guidelines enhancement when it stated that Benzer's sentence was "within the Guidelines range."

Benzer appeals his sentence and contends that the district court erred when it failed to rule on the loss amount dispute as required by Federal Rule of Criminal Procedure 32(i)(3)(B) ("Rule 32(i)(3)(B)"). We agree. Rule 32(i)(3)(B) states, "At sentencing, the court . . . must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." All rulings under Rule 32 must be "express" or "explicit." *United States v. Doe*, 705 F.3d 1134, 1153 (9th Cir.

13

2013) (quoting *United States v. Houston*, 217 F.3d 1204, 1208 (9th Cir. 2000)). Rule 32(i)(3)(B) applies when there is a "specific factual objection" to a presentence report. *United States v. Petri*, 731 F.3d 833, 841 (9th Cir. 2013). We have held that when a defendant challenges the loss amount calculations for purposes of applying a sentencing enhancement, the defendant raises both "a factual and legal dispute." *United States v. Berger*, 587 F.3d 1038, 1047 (9th Cir. 2009). Plain error review applies because Benzer did not make this claim below. *United States v. Christensen*, 732 F.3d 1094, 1101 (9th Cir. 2013). "Under plain-error review, reversal is permitted only when there is (1) error that is (2) plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Flyer*, 633 F.3d 911, 917 (9the Cir. 2011) (citation omitted).

The district court clearly erred when it did not rule on the amount of loss dispute. After the district court rendered Benzer's sentence, the government asked the following question to the court: "Your Honor, just so the record is clear, you've adopted the guidelines proposed in the PSR; is that correct?" The court responded: "Yes, sir. That's pretty much, yes. . . . It's—of course the guidelines are not binding, but I think they provide some guidance and help to us." Contrary to the government's position, however, the district court's response does not mean that

14

the court necessarily adopted the loss amount that was stated in the PSR nor that the court ruled on the loss amount dispute as required by Rule 32.

Additionally, since the district court *appears* to have applied the Guidelines section 2B1.1(b)(1)(M) enhancement on the grounds that the loss amount exceeded $50,000,000 without stating as such or explaining its reasoning, the record is not sufficiently clear to allow us to review how the district court computed the amount of loss. *See United States v. Emmett*, 749 F.3d 817, 821 (9th Cir. 2014).

Benzer has met his "burden of persuading us that his substantial rights were affected"—that is, he has established "that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." *United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005). Benzer, the government, and the PSR each offered widely divergent loss amounts.

Therefore, we vacate Benzer's sentence and remand for resentencing on an open record. In light of this disposition, we need not address Benzer's other claims on appeal regarding his sentencing. *See United States v. King*, 257 F.3d 1013, 1029 (9th Cir. 2001).

7. David Ball ("Ball"), who was convicted of conspiracy to commit wire and mail fraud and of wire fraud, appeals his sentence of 72 months' imprisonment. At Ball's sentencing, the district court emphasized that it was imposing that sentence in order to avoid disparity with the sentences of Ball's co-

15

defendants. As the court stated, "Part of the—a large part of what the Court tries to do is to maintain parity or avoid disparity." Since we hold that Benzer must be resentenced, and, when sentencing Ball, the district court emphasized that it was seeking to maintain parity with other co-defendants, we also vacate Ball's sentence and remand for resentencing on an open record. *See generally* 18 U.S.C. § 3553(a)(6).

8. Benzer also contends that the district court plainly erred when it ordered him to pay restitution to the Vistana and Park Avenue HOAs.[6] The Mandatory Victims Restitution Act ("MVRA") provides that, when sentencing a defendant for "any offense committed by fraud or deceit[,]" the district court shall order the defendant to make restitution to the victim of the offense. 18 U.S.C. § 3663A(c)(1)(A)(ii). Benzer claims that the Vistana and Park Avenue HOAs were not victims under the MVRA. A victim under the MVRA is any person:

> directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2). Benzer contends that the Vistana and Park Avenue HOAs and board members included co-conspirators, and a co-conspirator cannot

---

[6] Gregory was also ordered to pay restitution to the Vistana and Park Avenue HOAs and joins Benzer's claim.

recover restitution for crimes in which he participates. However, the HOAs became victims when the conspirators made their way onto the HOAs' boards of directors through fraud and when the conspirators misappropriated HOA funds to enrich Benzer and his associates. It was not plain error for the district court to conclude that the HOAs were victims even though they had been infiltrated by Benzer's associates.

Benzer also claims that the district court erred because it did not explain how it calculated the amount of restitution owed. The restitution order itself does not explain why Benzer was ordered to pay $12,228,913.40 in restitution to the Vistana and Park Avenue HOAs. However, at sentencing, the district court stated that the restitution amount was "set out at Page 72" of the PSR. Page 72 of the PSR lists the amount of restitution owed based on what the government reported in its sentencing memorandum. The government calculated those numbers using trial exhibits. Thus, the district court did not commit plain error when it selected the restitution amounts.

Third, Benzer claims that the government did not prove causation. Restitution may be awarded for losses only if "the defendant's conduct was an actual *and* proximate cause" of the victim's losses. *United States v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013). According to Benzer, he did not proximately cause the Vistana and Park Avenue HOAs to pay legal fees to Quon's law firm and to

17

Barry Levinson, who was another Benzer-affiliated attorney, because those attorneys "provided the legal services and billed the respective HOAs." However, Benzer admitted in his plea agreement that the conspiracy specifically intended the HOAs to hire Quon's law firm and Mr. Levinson. Therefore, it was not plain error for the district court to conclude that the attorney's fees were a foreseeable loss the HOAs would suffer and were caused by Benzer's conduct in running the conspiracy.

Finally, Benzer claims that the district court plainly erred when it ordered him to pay restitution of $1,165,186.81 to the United States Treasury based on his tax evasion counts because, according to Benzer, "there was insufficient documentation of taxes owed, if any." However, that figure was the amount of tax liability the indictment charged Benzer with attempting to evade. The PSR selected that same amount as restitution owed to the United States Treasury. Benzer pleaded guilty to tax evasion and did not challenge below the fact that he owed $1,165,186.81 in taxes to the United States Treasury. Therefore, the district court did not plainly err when it selected that tax liability amount in the restitution order.

9. The criminal forfeiture allegations that were originally included in the indictment are dismissed as the government abandoned them. *See generally* FED.

18

R. CRIM. P. 48(b); *Coffin v. United States*, 156 U.S. 432, 443 (1895); *United States v. Samango*, 607 F.2d 877, 884 (9th Cir. 1979).

**AFFIRMED as to the convictions of Gillespie, Gregory, and Ruvolo, Gregory's sentence, and the restitution order, REVERSED AND REMANDED as to the sentences of Benzer and Ball.**