**Opinion issued May 8, 2025.**



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-23-00664-CR

————————————

**LARRY RODRIGUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Case 1642022**

---

## O P I N I O N

A jury found the appellant guilty of murder and assessed punishment at confinement for life. The appellant raises three points of error. In his first point the appellant claims he was denied his right to counsel when he was unrepresented for five days during the period when he could have moved for new trial. In his second

and third points he complains that certain comments by the trial court in voir dire violated his statutory and constitutional rights.

We affirm.

## Background

Because of the nature of the appellant's claims, it is unnecessary to go into detail regarding his offense. It suffices to say that when Cedric Gordon went to visit a female friend at 3:45 am, the appellant—who was visiting a neighboring house—approached Gordon, expressed disapproval at the female for associating with Gordon, then shot Gordon. A gunfight ensued and Gordon died of his injuries.

## Trial Court's Comments During Voir Dire

We will start with the appellant's second and third points because our resolution of those points informs our resolution of his first point. In his second and third points of error the appellant complains about certain comments the trial court made during voir dire. The trial court explained to the venire some steps Harris County was taking to reduce its backlog of cases. The appellant singles out this comment:

> I had a prospective juror ask me some weeks back, months back, when did I think we would get caught up. And I answered in this way, I said when individuals stop breaking the law we might get caught up. But the way things have been going, as you see on the news, it doesn't look like we're going to get caught up anytime soon.

In his second point of error the appellant claims this comment violated Code of Criminal Procedure Article 38.05. In his third point the appellant claims this comment "deprived Appellant of due process and an impartial judge, and vitiated Appellant's presumption of innocence."

## I.  The trial court did not violate Article 38.05. Its comment did not convey an opinion of the case or the appellant.

The appellant did not raise a contemporaneous objection. With very few exceptions, a party may not complain on appeal about a trial error unless the party made a contemporaneous objection. *See Proenza v. State*, 541 S.W.3d 786, 797 (Tex. Crim. App. 2017) (rejecting common-law "fundamental error" exception to general rules of error preservation).

One of those exceptions is Article 38.05. That article generally prohibits the trial court from expressing its thoughts on a case to the jury:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. art. 38.05.

The Court of Criminal Appeals explained in *Proenza* that violations of Article 38.05 may be raised for the first time on appeal because compliance is "fundamental to the proper functioning of our adjudicatory system." *Proenza*, 541 S.W.3d at 798–99. This is so because Article 38.05 "protect[s] the perception of the trial judge's

3

impartiality in front of the jury." *Id.* at 799. "When a litigant contends that the trial judge has shirked her duty by openly conveying to the jury her opinion of the case, the litigant has necessarily alleged than an alarming perversion of [the trial judge's role as neutral arbiter] has taken place." *Id.* (quotation omitted).

With that said, on its face the complained-of comment here does not violate Article 38.05. It was not made while ruling on the admissibility of evidence, nor did it convey an opinion about this case. *See Arrellano v. State*, 555 S.W.3d 647, 653 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (holding complaint about comment that did not violate Article 38.05 could not be raised on appeal without trial objection); *Loge v. State*, 550 S.W.3d 366, 377 (Tex. App.—Houston [14th Dist.] 2018, no pet (same).

The appellant claims that by explaining that the number of criminal trials correlated to the number of crimes, the trial court "directly communicated to the panel that [the judge] believed that the backlogged cases involved individuals like the Appellant who were breaking the law."

The trial court's comment explained that the number of criminal trials correlated to the number of crimes. That is not a comment on the appellant's guilt.

The appellant argues that the trial court's reference to "individuals" who break laws "would have included persons like the Appellant, as he was arrested and charged for a crime, contributing to the backlog [the trial court referenced]." That

4

goes beyond the trial court's comments. The trial court's comments did not convey that the people being tried had committed crimes. The comments conveyed only that trials related to offenses.

That distinction is relevant here because at trial the appellant admitted there was a crime, he denied only that he committed it.[1] The worst that can be said of the trial court's comments is that they conveyed to the jury an opinion that did not implicate the appellant's guilt and with which both parties would have agreed.

Violations of Article 38.05 are subject to the standard of harm for non-constitutional error. *Proenza*, 541 S.W.3d at 801. We must disregard the violations unless they "affect[ed] substantial rights." TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

We do not believe the trial court's comments about the legal system writ large can fairly be called "remarks calculated to convey to the jury [the trial court's]

---

[1] In his opening statement, defense counsel told the jury the case would be about identity: "I don't know who Cedric Gordon got into a gun battle with that night, but he did get into a gun battle. And the only people that put Larry Rodriguez there are people with grudges." In his closing argument, defense counsel claimed the State had failed to prove identity: "I'm sorry Cedric Gordon is dead, and it's okay for you to be sorry for that too. Nobody should be shot to death in circumstances that we don't fully understand, we don't know about. But what we do know is they cannot, beyond a reasonable doubt, put a gun in Larry Rodriguez's hand and say he pulled the trigger."

5

opinion of the case." The comments were not "reasonably calculated to benefit the State or prejudice the defendant's rights." *Irsan v. State*, ___ S.W.3d ___, No. AP-77,082, 2025 WL 610310, at \*10 (Tex. Crim. App. Feb. 26, 2025) (stating standard for finding Article 38.05 violation).

But even if they were, the comments did not have a substantial and injurious effect or influence on determining the jury's verdict. In *Irsan*, the trial court told a venire panel that the case—a high publicity capital murder—"was unsolved for a couple of years. And then when it was solved there was more publicity about it." *Id.* at \*9. On appeal, the defendant claimed that by telling the jury the case had been "solved," the trial court conveyed a belief he was guilty. The Court of Criminal Appeals held any error in the comment would not warrant reversal because the venire members were properly instructed on the presumption of innocence and said they could follow the law on the presumption of innocence. Here, the venire was instructed on the presumption of innocence, no one raised their hand when asked if anyone disagreed with it, and the jury charge instructed on the burden of proof.

The comment here is less pointed than the comment in *Irsan*. The trial court here did not tell the jury that the Gordon's murder had been solved. At most it told the jury this trial related to a crime, which was obvious from the evidence and something both parties agreed with.

We overrule point two because the trial court did not violate Article 38.05. Alternatively, if it did any error would not warrant reversal.

## II. The appellant has not shown the trial court's comment violated due process, proved that the judge was biased, or "vitiated the Appellant's presumption of innocence."

The appellant's third point complains about the same comment as did his second. In this point he claims the comment "deprived Appellant of due process and an impartial judge, and vitiated Appellant's presumption of innocence."

Much of the appellant's argument goes to preservation. In the trial court, defense counsel did not complain about the comments until the day after voir dire. Defense counsel asked the trial court to dismiss the jury and pick another jury, but the trial court overruled this motion. As the appellant admits on appeal, "the alleged error is likely not preserved for appellate review due to the motion being heard after voir dire was completed." Relying on *Proenza*, the appellant asks us to consider the complaints despite the lack of objection.

### A. Due Process

The appellant claims the trial court's comments violated his due-process "right to a fair trial" and his right to an impartial judge. Texas statutory law severely limits what a trial judge may say in front of the jury, but federal due-process protections do not prohibit trial courts from either summing up or commenting on evidence. *See Querica v. United States*, 289 U.S. 466, 469-70 (1933) (discussing

7

common-law authority of judge to comment on evidence and noting this authority was carried over in federal constitution). There are, however, limits on how far a judge may go in summing up or commenting on evidence. A defendant's due-process right to a fair trial is violated by judicial remarks that 1) convey bias regarding a defendant's guilt and 2) cause "serious prejudice." *United States v. El-Bey*, 873 F.3d 1015, 1020 (7th Cir. 2017).

The appellant directs us to our prior declaration that "[i]t is an unresolved issue whether and when a trial court's comments constitute fundamental constitutional due process error that may be reviewed in the absence of a proper objection." *McLean v. State*, 312 S.W.3d 912, 916 (Tex. App.—Houston [1st Dist.] 2010, no pet.). That declaration, however, predates *Proenza*, which changed how courts must review complaints about judicial comments.

In *Proenza*, the trial court questioned a defense witness in a manner that made clear the trial court doubted some of the witness's testimony. Defense counsel did not object. On discretionary review the Court of Criminal Appeals analyzed whether a trial objection was required based on where Article 38.05 fit in the framework for error preservation described in *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993).

*Marin* described the legal system as comprising three kinds of rules:

> (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request.

851 S.W.2d at 279.

The first category comprised "systemic" rules that could not be waived or forfeited, but were required whether the parties wanted to follow them or not. *Id.* at 278. The examples *Marin* gave for this category regarded jurisdiction: a defendant could not be tried for a felony in a county court at law even if he and the State wanted him to be, nor could a child be tried as an adult without a waiver of the juvenile court's jurisdiction. *Id.* at 279.

*Marin*'s second category comprises rights that, while waivable, are "so fundamental to the proper functioning of our adjudicatory process as to enjoy special protections." *Id.* at 280. These rights can be waived, but they cannot be forfeited through mere inaction. *Id.* Examples of these rights include a defendant's right to counsel and his right to a jury trial: An indigent defendant can represent himself and have a bench trial, but that would require explicit waivers on his part. *See id.* Absent explicit waivers, he must be appointed an attorney and must have a jury trial.

Most rights, however, fall into *Marin*'s third category: Rights that are forfeited through inaction. For instance, a defendant has a right to exclude testimonial hearsay, but if he is fine with the admission of certain testimonial hearsay, all that is required to relinquish this right is to sit silently when the State offers the evidence.

*Id.* at 278. No explicit waiver is needed. As *Marin* pointed out, these rights are "optional with the parties." *Id.*

*Proenza* examined the text and purpose of Article 38.05 and determined that it was "at least" a category-two rule, and perhaps a category-one rule. *Proenza*, 541 S.W.3d at 801. *Proenza* based this in part on the language of Article 38.05, which it said imposed a "duty to refrain *sua sponte* from a certain kind of action." *Id.* at 798. *Proenza* also noted the importance of Article 38.05 to Texas's legal system, which had an uncommon "devotion" to "the proposition that the judge is a neutral arbiter between the advocates." *Id.* at 799 (internal quotation omitted).

This analysis was specific to Article 38.05. *Proenza* made no pronouncement on the preservation requirements for a complaint that a trial court's comments violated the due process protections of the federal constitution. *See id.* at 801–02 (holding error under review was non-constitutional).

After *Proenza*, may a defendant raise a due-process complaint about a trial court's comments without objecting in the trial court? As in *McLean*, we will not make a novel ruling on preservation. Neither, however, will we follow *McLean*'s approach, which *Proenza* disavowed.

*McLean* chose to address a "due process" complaint as a question of "fundamental error." 312 S.W.3d at 915–18. Traditionally Texas courts had used the phrase "fundamental error" to describe situations where they would address

10

otherwise unpreserved claims. *Proenza* explained that the term had come to be used in two ways: 1) the right violated was so "fundamental" that courts were obliged to address violations regardless of preservation or harm; or 2) the harm from the violation was "sufficiently fundamentally egregious" that courts were obliged to review it regardless of preservation. *Proenza*, 541 S.W.3d at 794 (quotation omitted). *Proenza* noted that the first formulation was "functionally the same" as declaring that a right fell into *Marin*'s first two categories. *Id.*

But *Proenza* "reject[ed]" the second formulation, which it described as "a harm-based theory of error preservation." *Id.* at 794, 796 (internal quotation omitted). Rather than assessing the harm of an unpreserved alleged error to determine whether to address it on appeal, after *Proenza* courts must look to the nature of the right. *Id.* at 796–97.

*McLean* declined to reach the merits of the defendant's claim "because the trial judge's comments . . . did not rise to 'such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury.'" *McLean*, 312 S.W.3d at 917 (quoting *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001)). This is an example of the "harm-based theory of error preservation" that *Proenza* disavowed. Indeed, *Jasper* was *Proenza*'s main example of this approach. After *Proenza*, *McLean*'s harm-based approach to error preservation is unavailable to us.

11

Assuming, without holding, that the appellant may raise his due-process complaint without a trial objection,[2] we reject it on the merits. Since *McLean*, the Court of Criminal Appeals has explained that "[w]hen a state court chooses to address the merits of a federal claim, its decision to grant or deny relief must accord with federal law." *Ex parte Argent*, 393 S.W.3d 781, 784 (Tex. Crim. App. 2013).

The federal constitution allows judges to comment on and sum up evidence. Thus, comments that violate Article 38.05 do not necessarily violate due process.

The test for determining whether a trial court's comments violate federal due process protections is 1) whether the comments were improper and, if so, 2) whether the complaining party can show serious prejudice. *United States v. Pena*, 24 F.4th

---

[2]  "Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial." *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013) And "[f]ederal courts regularly assume that a party must object to the judge's comment or summing up to preserve error for appeal." 21A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5087 (2d ed.); *see, e.g.*, *United States v. Cherry,* 720 F.3d 161, 166 (4th Cir. 2013); (applying plain error review to un-objected-to judicial comment); *United States v. Ball*, 711 Fed. Appx. 838, 843 (9th Cir. 2017) (same).

However, the Court of Criminal Appeals has recently held that at least one type of federal due-process claim could be raised in Texas courts for the first time on appeal, despite a consensus among federal courts that an objection was required. *Compare Hughes v. State*, 691 S.W.3d 504, 519 (Tex. Crim. App. 2024) (holding due-process right to be present was *Marin* category-two waivable-only right) *to, e.g.*, *United States v. Rivera-Rodriguez*, 617 F.3d 581, 603 (1st Cir. 2010) (applying ordinary rules of error preservation and holding defense failure to object to defendant's absence meant claim could be reviewed only for plain error); *United States v. Rolle*, 204 F.3d 133, 138 (4th Cir. 2000) (same); *United States v. Downs*, 61 F.4th 1306, 1314 (11th Cir. 2023) (same).

46, 72 (1st Cir. 2022). As with some other federal due-process protections, an analysis of prejudice is subsumed within the error analysis.[3] *See, e.g.*, *Kentucky v. Stincer*, 482 U.S. 730, 747 (1987) (holding defendant did not show violation of due-process right to be present at hearing because record did not show prejudice from absence); *Linton v. State*, 275 S.W.3d 493, 509 (Tex. Crim. App. 2009) (holding defendant failed to show violation of due-process right to interpreter because record did not show prejudice from lack of more interpretation services).

Broadly speaking, a trial court's comments become "improper," for purposes of due process, when the trial court takes on a role not permitted to a judge at common law—such as witness—or when the trial court takes on a permitted role—such as commenting on evidence—in a manner that shows partiality. *United States v. Márquez-Pérez*, 835 F.3d 153, 158 (1st Cir. 2016). Within this second category, a trial court's comments "must be evaluated in the context of the course of the trial." *United States v. Curry*, 538 F.3d 718, 728 (7th Cir. 2008). "To be constitutional error, the trial judge's statements, viewed as a whole, must have amounted to an intervention that could have led the jury to a predisposition of guilt by improperly

---

[3] This differs from the approach that *Proenza* disclaimed for state-law claims, where courts used harm to assess preservation. In his brief, the appellant claims that the errors he raises in his third point are structural errors that are immune from harm analysis. Even if that were true, that would require a finding of error first, and the federal case law makes clear that a showing of prejudice is required as part of the error analysis. Without error, a harm analysis is moot.

confusing the function of judge and prosecutor." *United States v. Munoz*, 150 F.3d 401, 413–14 (5th Cir. 1998).

The First Circuit seems to be the only federal circuit to explain what is meant by "serious prejudice" in a case where a claim of biased judicial commentary was preserved.[4] That Court required a showing of a "a reasonable probability that, but for the error, the verdict would have been different." *United States v. Rivera-Rodríguez*, 761 F.3d 105, 112 (1st Cir. 2014).[5]

The First Circuit noted the importance of context for assessing harm. A reviewing court should "consider isolated incidents in light of the entire transcript so as guard against magnification on appeal of incidences which were of little importance in their setting." *Rivera-Rodríguez*, 761 F.3d at 113 (quotation omitted). But "multiple interventions" by the trial court might produce a cumulative effect greater than any individual comment would suggest. *Id*. at 112 n.8, 113.

---

[4] Again, we presume, without holding, that preservation was not required in state court.

[5] This standard matches other situations where a showing of prejudice is required for the error analysis of a claim. For instance, a defendant claiming a due-process violation based on the prosecution's failure to disclose evidence must show a "reasonable probability" that disclosure of the evidence would have produced a different result. *Turner v. United States*, 582 U.S. 313, 324 (2017). And a defendant raising a Sixth Amendment ineffective assistance of counsel claim must show a "reasonable probability" that the result of his proceeding would have been different without counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 694–96 (1984).

Turning to the appellant's due process claim, for the same reasons we concluded any violation of Article 38.05 would not warrant reversal under Rule 44.2, we also conclude the record does not show the appellant suffered substantial prejudice from the trial court's comment.

The complained-of comment occurred once, and the trial court did not revisit the topic. The trial court did not connect its comments to the appellant's case in particular. Later in voir dire the trial court told the jury that an indictment was not evidence of guilt, that the defendant was presumed innocent, and that the jury was the factfinder who would determine witness credibility. These principles were repeated in the jury charge.

Also weighing against a finding of substantial prejudice is that, as we mentioned when discussing Article 38.05, the trial court's comment conveyed nothing more than that the number of criminal trials related to the number of crimes. Viewing the complained-of comment in light of the whole record—which includes defense counsel's admission that this trial related to a crime, as well as the instructions from the trial court during voir dire and in the jury charge about the proper functioning of a trial—we conclude the trial court's isolated comment at the beginning of voir dire did not produce serious prejudice. We overrule the appellant's due-process complaint.

### B. Presumption of Innocence

The appellant also claims the trial court's comment "violated [his] presumption of innocence."

"The United States Constitution prohibits a trial judge from making a comment in front of the jury that effectively destroys a defendant's constitutional presumption of innocence." *Irsan v. State*, ___ S.W.3d ___, No. AP-77,082, 2025 WL 610310, at *10 (Tex. Crim. App. Feb. 26, 2025) (quotation omitted). In *Irsan*, the Court of Criminal Appeals assumed, without deciding, that a defendant could raise an unpreserved complaint that the trial court's comment violated his presumption of innocence. It held that the same reasons that rendered any violation of Article 38.05 harmless, which we discussed earlier, made the alleged error harmless for this purpose as well. *Irsan*, 2025 WL 610310, at *11 ("The comment was brief, the trial judge later emphasized the importance of the presumption of innocence, and none of the [affected] veniremembers spoke up when the trial judge asked whether they 'could not give [Appellant] that all-important presumption of innocence.'").

That rationale applies at least as strongly here. *See id*. The trial court's comment was brief, the trial court and the parties discussed the presumption of innocence, and none of the venire members spoke up when defense counsel asked if

they could not presume the appellant's innocence. We overrule this part of the appellant's third point.

**Right to Counsel**

In his first point of error, the appellant complains he was without appointed counsel for several days after his conviction. His proposed remedy is that we remand the case and allow him to file an out-of-time motion for new trial.

The trial court pronounced the appellant's sentence on September 1, 2023. Rule of Appellate Procedure 21.4 gives defendants thirty days after pronouncement of sentence to move for a new trial, but because October 1 was a Sunday the appellant had until October 2 to file the motion. TEX. R. APP. P. 4.1(a), 21.4(a). That is thirty-one days.

Also on September 1, the trial court granted trial counsel's motion to withdraw. The record shows that on September 7, the trial court appointed the public defender's office to represent the appellant. Thus, the record seems to show—and the State does not contest—that the appellant was unrepresented for the five days between those orders.

The post-sentencing period during which a motion for new trial may be filed is a "critical stage" of a criminal proceeding for which an indigent defendant has a right to appointed counsel. *Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007). When an indigent defendant is deprived of appointed counsel for some, but

17

not all, of this period, we employ a rebuttable presumption that defense counsel rendered effective representation during the period for which the defendant had appointed counsel. *Id.*; *Rodriguez v. State*, No. 01-22-00295-CR, 2023 WL 8262839, at \*17 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, no pet.) (mem. op., not designated for publication). To rebut this presumption, the record must show that the defendant had a "facially plausible claim" he could not raise in a motion for new trial because he had no counsel for a period. *Cooks*, 240 S.W.3d at 911–12.

The record here does not show any post-sentencing proceedings. The only post-sentencing filings from the appellant are routine appellate filings that do not contain evidence suggesting a basis for a new trial.

In his appellate brief, the appellant proposes three "facially plausible claims." Two revolve around comments made by venire members. During voir dire, juror 48 originally said he could not consider a life sentence, but later explained that he could consider a life sentence, but he "just [didn't] know why we would do that instead of just killing them or death penalty or whatever." Juror 48 thought his solution was "cheaper." The prosecutor reminded juror 48 of the trial court's earlier explanation that this was not a capital case so the death penalty would not be an option. There was no more conversation on the topic.

After voir dire, when the parties were discussing challenges and strikes, the trial court said a bailiff had told him "that he was told by one of the jurors that he

18

overheard Juror No. 48 and 49 discussing the case in the hallway, and the opinion of both of 'em was that he's guilty." The parties agreed that jurors 48 and 49 were both being struck for cause. The trial court asked the bailiff whether "we need to talk to" the juror who overheard the conversation. The bailiff replied, "He's good." There was no more conversation on the topic.

From these two exchanges, and the trial court's comment we discussed in relation to points two and three, the appellant presents three claims he argues are facially plausible:

> Whether trial counsel rendered ineffective assistance of counsel when they failed to question juror number 50, or the entire venire panel regarding the effects of the comments made by [the trial court] or juror 48 during voir dire;

> Whether trial counsel rendered ineffective assistance of counsel when they failed to timely object to [the trial court]'s comments during voir dire; and

> Whether trial counsel rendered ineffective assistance of counsel when they failed to timely object and/or move for a mistrial after juror 48's comments.

These claims fail first because the appellant does not explain how a five-day delay in appointing counsel kept him from investigating and raising them. These claims were detailed in a motion to quash filed by trial counsel before opening statements. Appellate counsel had access to that motion from the date of appointment. The appellant's brief does not explain how twenty-six days was not sufficient to investigate these claims but thirty-one days would have been. Without

19

evidence that the delay in appointment prevented appellate counsel from investigating these claims, the appellant has not overcome the presumption that his appellate counsel provided constitutionally adequate representation.

It's true enough that appellate counsel did not have the reporter's record during the motion-for-new-trial period. But the record was not filed until twenty-nine days after that period closed. Appointing appellate counsel five days earlier would not have given him access to the reporter's record during the motion-for-new-trial period.

The appellant's "facially plausible claims" also either fail on their merits or are too speculative to warrant a remand for a motion for new trial. The appellant's claimed harm from the failure to object to the trial court's comment is that the matter was not preserved for appellate review, but we addressed the matter on its merits in points two and three. The appellant was not harmed by trial counsel's failure to object.

The appellant's brief does not explain how juror 48's comments were "prejudicial" in a way that is cognizable on appeal. The appellant's cited case, *McGee v. State*, 923 S.W.2d 605 (Tex. App.—Houston [1st Dist.] 1995, no pet) illustrates why his point fails. In that case a potential juror told the venire she personally knew that the defendant had prior convictions.

Juror 48 had an opinion that differed from the law, but that is an ordinary occurrence in voir dire. Juror 48's comments did not relate to the appellant specifically or give the jury any prejudicial information. The extent of his comment was that he thought "just killing them or death penalty or whatever" was "cheaper" than assessing a life sentence. Apart from whether that was true, juror 48 said he could consider a life sentence. The panel was advised that the death penalty was not an option, and the jury did not attempt to assess the death penalty. The appellant cites no authority showing juror 48's comments were a valid basis for a mistrial, so he has not shown that counsel's reason for failing to request a mistrial could result in a finding of ineffective assistance.

Finally, the claim that trial counsel was ineffective for failing to ask the panel how they felt about the trial court's and juror 48's comments is simply too speculative.[6] *See Eaglin v. State*, ___ S.W.3d ___, No. 01-23-00426-CR, 2024 WL 5126854, at *15 (Tex. App.—Houston [1st Dist.] Dec. 17, 2024, pet. ref'd) (rejecting

---

[6] The appellant claims that perhaps defense counsel should have questioned juror 50 specifically. The appellant's brief reflects a belief that juror 50 was the juror who reported the conversation between jurors 48 and 49, but we find nothing in the record specifying which juror made the report. The fact that a juror reported two other jurors who were having an inappropriate conversation strongly suggests the reporting juror was not persuaded by the conversation and would follow instructions. Moreover, nothing in the record suggests jurors 48 and 49's belief that the appellant was guilty was based on any evidence, so there is no reason to believe they conveyed anything of import to the reporting juror. This claim is entirely speculative.

defendant's "facially plausible claim" because it was based on speculation; "the articulation of vague possibilities does not suffice to show the existence of facially plausible claims"). It's always possible a juror had negative feelings based on a subjective interpretation of comments that conveyed no actual information, but the appellant has not shown it's plausible here.

Because the record does not show the appellant was harmed by not having counsel for five days, we overrule his first point of error.

## Conclusion

We affirm the trial court court's judgment.

Clint Morgan
Justice

Panel consists of Justices Guerra, Caughey, and Morgan.

Publish.